

ENTERED
03/18/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-31467 |
| OSYKA CORPORATION | § | Chapter 11 |
| and | § | |
| OSYKA PERMIAN, LLC, | § | |
| Debtor(s). | § | Judge Isgur |

### MEMORANDUM OPINION

This case arises out of a sale of assets and assignment of oil and gas leases ("Sale and Assignment") by Osyka Permian, LLC and Osyka Corporation ("Debtors") to Legado Resources, LLC ("Legado"). The question the Court must resolve is the extent to which the Sale and Assignment was "subject to" Bruce Houff's ("Houff") overriding royalty interest ("ORI"). As set forth below, the Court holds that Debtors' Sale and Assignment to Legado was subject to Houff's ORI and to the lien securing payment of the ORI.

### Background

**1. Events Leading Up to This Case**

On March 4, 2005, Houff, the plaintiff in a case pending in the 24th Judicial District Court of Jackson County, Texas, executed a Settlement Agreement and Mutual Release ("Settlement Agreement") with the Debtors.[1] Pursuant to the Settlement Agreement, Debtors agreed to execute and deliver to Houff the Assignment of Overriding Royalty and Area of Interest Agreement ("ORI Agreement") between Debtors, as assignors, and Houff, as assignee.

---

[1] The Settlement Agreement was also executed by defendants Texas Petroleum Investment Company, Oil Well Buyers Corporation and Gene A. Smitherman.

1

The ORI Agreement provided, in relevant part, that Debtors agreed to assign or grant the following interests[2] to Houff:

1. A 3% of 8/8th ORI in certain *existing*[3] oil, gas and mineral leases owned by Debtors;

2. A 3% of 8/8th ORI in *future*[4] oil, gas and mineral leases acquired during a specified term within a designated Area of Interest ("AOI"); and

3. A lien and security interest in Debtors' existing and future leases within the AOI, the production therefrom, the equipment thereon and the proceeds of the foregoing to secure payment of Houff's ORI.[5]

The ORI Agreement was made expressly binding on all successors and assigns of the parties to the assignment. The ORI Agreement was duly filed and recorded in Vol. 256, Page 589, et. seq. of the Official Records of Jackson County, Texas.

Neither Houff nor Debtors have questioned the validity of the Settlement Agreement or ORI Agreement (collectively, "Agreements"). However, in the years following the execution of the Agreements, Debtors did not fully honor the Agreements' terms. Debtors properly delivered assignments of legal title to Houff reflecting his beneficial ownership of the ORI in existing leases; but Debtors failed to regularly pay the 3% ORI due to Houff on such existing leases. Further, although Debtors at times paid Houff his royalty on after-acquired leases,

---

[2] This Court's description of the interests transferred by Debtors to Houff is a brief summary of the ORI Agreement, which is filed at Doc. No. 305-1.

[3] Throughout this Opinion, the term "existing leases" shall refer to leases owned by the Debtors before March 4, 2005.

[4] Throughout this Opinion, the Court will refer to these "future lease"—the leases acquired by Debtors or Legado after March 4, 2005 within the AOI—as "after-acquired leases."

[5] For the remainder of the Opinion, the Court will refer to this lien simply as the AOI Lien.

2

Debtors failed to deliver assignments[6] on after-acquired leases to Houff as provided for in the Agreements.

Debtors filed a chapter 11 bankruptcy petition on March 3, 2008. Houff filed a proof of claim on June 3, 2008 seeking payment of unpaid royalties and undelivered assignments. Houff's claims against Debtors were subsequently resolved by this Court's Order Allowing Administrative Expense and Ordering Payment[7] (Doc. No. 421) on February 12, 2009. Thus, Houff does not assert that any further amount is due directly from the Debtors. Instead, Houff's complaint concerns the Sale and Assignment by Debtors to Legado pursuant to the Debtors' bankruptcy plan. Accordingly, Houff only seeks relief against Legado.

**2. Dispute Between Houff and Legado**

Debtors filed a Disclosure Statement (Doc. No. 196) on June 6, 2008 and an Amended Chapter 11 Plan (Doc. No. 239) on July 18, 2008. The plan provided that the Debtors would sell substantially all of their oil and gas assets to Legado. The specific terms of the sale were set forth in the Agreement of Sale and Purchase ("APA") executed by Debtors and Legado on July 16, 2008. The APA—which was summarized in, and attached as an exhibit to, the Disclosure Statement—provided that Debtors would sell their assets free and clear of any lien or encumbrance. The APA also included a list of certain executory contracts and leases that would be assumed and assigned to Legado. The Disclosure Statement and Plan did not address the status of Houff's ORI. To the extent that Houff's rights were ownership rights in real

---

[6] The form of the assignments, which was set out in the Agreements, provided that Debtors and their assigns were to deliver legal title to Houff reflecting his beneficial interest in the ORI of the after-acquired leases. The form of assignment also provided that Houff would retain an AOI Lien to secure payment of the ORI.

[7] Houff was awarded an administrative expense against Debtors in the amount of $73,288.05 and the Debtors were ordered to make payment to Houff within 10 days of entry of the Order.

3

estate, they could not have been modified by the Plan over Houff's objection. *See In re Reichmann Petroleum Corp.,* 2009 WL 915280 (S.D. Tex. 2009).

Further, Legado was a joint movant, along with Debtors and other interested parties, for approval of the Amended Joint Expedited Motion for Order Approving Compromise of Controversies Pursuant to Rule 9019 ("Motion for Approval of Compromise") (Doc. No. 233), which was filed on July 17, 2008. The Motion for Approval of Compromise sought the Court's approval of a settlement agreement which would put Legado in a position to purchase substantially all of the Debtors' assets pursuant to the APA.

This Court held a hearing on July 21, 2008 to consider the Motion for Approval of Compromise and the Disclosure Statement. At the hearing, the following discussion—which provides the foundation for Houff's complaint against Legado—transpired between the Court, Debtors' counsel, and Houff's counsel:

> THE COURT: Let me hear if there are any objections to the settlement. Any person in the courtroom should approach a microphone.
>
> HOUFF'S COUNSEL, MR. KIRKENDALL: Your Honor, Tom Kirkendall on behalf of Mr. Houff. We don't have an objection but we do have a very specific question which we've been unable to have answered by the Debtor and that is, is whether the Debtor proposes to sell its interest in the Lolita Field subject to Mr. Houff's overriding royalty on those properties.
>
> THE COURT: As opposed to doing what, Mr. Kirkendall; what are the other choices?
>
> HOUFF'S COUNSEL, MR. KIRKENDALL: Well, Your Honor, we don't think that there is any other choice, but the agreement does not speak specifically to that overriding royalty interest. The Debtor has failed during the case and even before that to make the specific assignments that it's required to. Now, the override is recorded so that can be enforced, the Debtors' obligation to assign those properties, but obviously from Mr. Houff's standpoint, it's very important to him to *understand whether the Debtor is proposing to sell its interest somehow free and clear of his override or whether it's simply trying to sell the interest subject to the override. And therefore the acquiring party would then assume the obligation to assign the overrides.*

4

THE COURT: Mr. Winikka?

DEBTORS' COUNSEL, MR. WINIKKA: *Yes, Your Honor, the assets would be sold subject to that overriding royalty interest*.

THE COURT: All right. Let me hear from any other parties?

Legado's counsel was present at this hearing and failed to object when Debtor's Counsel affirmed that the Sale and Assignment was subject to Debtors' obligation to assign Houff's ORI.

Additionally, near the conclusion of the July 21, 2008 hearing, the Court found that "the one clarification made by the Debtor today . . . is that the sale is *subject to* Mr. Houff's overriding royalty interest." Legado's counsel did not object to this finding. Moreover, even without the stipulation, that is likely the correct result. As indicated by the Court's question and Mr. Kirkendall's answer, there may have been no other choice.[8]

An ORI is a real property interest. *Quigley v. Bennett,* 227 S.W.3d 51, 54 (Tex. 2007). The interest is carved out of, and constitutes a part of, the working interest. *In re GHR Energy,* 972 F.2d 96 (5th Cir. 1992). Accordingly, the Debtor likely would not have had the legal authority to sell or to terminate Houff's real property interest.

Nevertheless, this matter was not litigated and the Court does not issue a dispositive ruling in this regard. Houff carefully protected his rights at the July 21, 2008 hearing and the Debtors and Legado acquiesced in that protection.

The Debtors' plan was subsequently confirmed on August 20, 2008 (Doc. No. 283). The Confirmation Order provided that, except as otherwise set forth in the plan, the Debtors' assets were transferred to Legado free and clear of all interests, claims, liens and encumbrances.

---

[8] As stated above, the discussion went as follows: Court: "As opposed to doing what, Mr. Kirkendall; what are the other choices?" Kirkendall: "Well, Your Honor, we don't think that there is any other choice . . . ."

5

The Sale and Assignment to Legado, which was conducted according to the APA, was completed shortly thereafter.

On September 17, 2008, Houff filed a Motion for an Order Directing Payment of Secured and Administrative Claims and Directing Debtor and Transferee to Fulfill Administrative Duties Under First Amended Joint Plan of Reorganization ("Motion for Payment") (Doc. No. 305). Houff sought payment for unpaid royalties from the Debtors and an order directing Legado, as transferee, to fulfill the duties that were formerly owed by Debtors to Houff.

The Court held a hearing on Houff's Motion for Payment[9] on November 26, 2008. At the beginning of the hearing, the following discussion took place between the Court, Houff's counsel, and Legado's counsel:

> HOUFF'S COUNSEL, MR. KIRKENDALL: Your Honor, part of the relief requested in Mr. Houff's motion was a request that the Bankruptcy Court direct the assignors to execute and deliver an appropriate overriding royalty interest *form* to Mr. Houff. Mr. Chavez represents Legado which is the assignee of the leases that were assigned by the Debtor. Legado and Mr. Houff have agreed that Mr. Gill and Mr. Chavez will work out the *form of an assignment* with regard to the overrides. If they are unable to do so, then we will come back and request the Court for the relief, but *we have agreed that pending their working out the terms of the form of assignment* that we would withdraw our request for purposes of today's hearing.
>
> THE COURT: Mr. Chavez, is that your understanding as well?
>
> LEGADO'S COUNSEL, MR. CHAVEZ: Yes, your Honor.
>
> THE COURT: All right, that's fine. We'll just take that stipulation.

Hr'g Tr., 4:23-5:14, Nov. 26, 2008. The stipulation between counsel for Houff and Legado was consistent with Legado's silence at the July 21, 2008 hearing: Legado did not object to Houff's

---

[9] As set forth above, Houff's claims against Debtors were subsequently resolved by the Court's Order Allowing Administrative Expense and Ordering Payment (Doc. No. 421).

right to delivery of an assignment of the ORI from Legado. Instead, the only potential dispute between Legado and Houff as of November 26, 2008 was the form of the assignment.[10]

However, on May 18, Legado filed a Response to Bruce Houff's Motion for Payment (Doc. No. 462) contending for the first time that "(i) Legado [was not] required to provide Mr. Houff additional overriding royalty interests in leases acquired during the Term in the AOI (above and beyond those already assigned to Mr. Houff by a validly executed assignment); and (ii) Legado [was not required to] provide a lien to Mr. Houff securing payment of the newly acquired royalty interests . . . ." Legado did acknowledge "its duty to honor the assignments already provided to Mr. Houff by the Debtors before the sale closed." Essentially, Legado claimed that Houff's right to assignment of ORI in after-acquired leases under Houff's ORI Agreement with Debtors was extinguished upon the Debtors Sale and Assignment to Legado. Thus, according to Legado, not only was Houff not entitled to the AOI lien, but Houff was also not entitled to any royalties from leases acquired after the Sale and Assignment.

Legado based its response upon the APA, Disclosure Statement and Confirmation Order (collectively, the "Documents"). Legado asserted that Houff's Motion for Payment should be denied because (i) the Confirmation Order (Doc. No. 283) provided that the assets sold to Legado were sold free and clear of all interests, claims, liens and encumbrances, and (ii) Houff received copies of the Disclosure Statement and APA which failed to provide for Legado's

---

[10] This is further evidenced by the November 11, 2008 email stipulation contained in Exhibit 7 to the June 24, 2009 hearing, in which it was agreed that:

> Mr. Houff will agree to a short continuance of tomorrows hearing with Legato (sic) with regard to *the form of assignment issue only* so long as it is understood on the record that (1) Legato (sic) is bound by the Bankruptcy Court's resolution in connection with tomorrow's hearing of the payout issue on the Willoughby and MOPAC wells as between Osyka and Mr. Houff, and (2) Legato (sic) agrees to have the Bankruptcy Court resolve any dispute *regarding the form of assignment* if Mr. Houff and Legato (sic) are unable to do before the date of the continued hearing on that issue.

assumption of Debtors' obligations to Houff. Essentially, Legado argued that the Documents— not Legado's omission at the July 21, 2008 hearing or Legado's stipulation at the November 26, 2008 hearing— determined Legado's obligations, or lack thereof, with respect to Houff.

The Court held a hearing on June 24, 2009 to consider Legado's Response to Houff's Motion for Payment. Houff and Legado sought resolution of two interrelated issues:

i. Whether Legado was required to assign Houff a 3% ORI on leases acquired after the Sale and Assignment within the AOI?

ii. If Legado was obligated to assign Houff a 3% ORI in after-acquired leases, whether the form of Houff's assignment must contain an AOI Lien or, whether Legado purchased the Assets free and clear of Houff's alleged lien?

At the June 24, 2009 hearing, Legado eventually conceded that Houff was entitled to assignment of a 3% ORI on after-acquired leases; Legado then focused its attention on objecting to Houff's entitlement to an AOI Lien. Legado's counsel stated that "[Legado] has always been willing to provide an assignment of the override; it is these accessory rights that constitute liens and encumbrances on the Oskya assets, not the assets of Mr. Houff, that we take exception to." Hr'g Tr., 10:10-14, June 24, 2009. Similarly, Legado's counsel later claimed that "[Legado is] willing to give [Houff] the overriding royalty interest, but it's the effect of the plan and the confirmation order and the rights that [Legado is] entitled to under Section 1141 that give [Legado], after the effective date, the properties free and clear of liens and encumbrances . . . ." *Id.* at 20:9-14.

At the conclusion of the June 24, 2009 hearing, the Court held that Legado was estopped by its prior conduct from disputing Houff's right to the ORI. The Court ordered Legado to begin sending royalty payments to Houff. The Court ordered further briefing on the issue of whether Legado was estopped from challenging Houff's right to a continued AOI

Lien.[11]  Thus, the sole question the Court must decide is whether Debtors' Sale and Assignment to Legado was free and clear of, or subject to, Houff's lien.

### Analysis

In his Brief in Support of Bruce Houff's Motion for an Order Directing Debtor and Transferee to Fulfill Administrative Duties Under First Amended Joint Plan of Reorganization (Doc. No. 488), Houff claims he is entitled to relief based upon (i) judicial estoppel, (ii) equitable estoppel, (iii) the law of the case doctrine, and (iv) Texas real property law.

**1. Judicial Estoppel**

The doctrine of judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996). Judicial estoppel "prevents internal inconsistency, precludes litigants from 'playing fast and loose' with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment." *Id.* "Importantly, because judicial estoppel is designed to protect the judicial system, not the litigants, detrimental reliance by the party opponent is not required." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004). Further, judicial estoppel applies to sworn and unsworn statements alike, and has been applied to statements of an attorney made in open court. *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 397 (5th Cir. 2003).

A party asserting a claim for judicial estoppel must meet three particular requirements: "(1) the party['s] . . . position is clearly inconsistent with the previous one; (2) the court must

---

[11] The briefs of Houff and Legado were received by September 14, 2009 (Doc. Nos. 448, 493). Houff subsequently requested leave to file a supplemental brief, which was not opposed by Legado. (Doc. No. 503). The Court granted Houff's motion for leave (Doc. 505). Accordingly, the Court will also consider the supplemental briefs filed by Houff (Doc. No. 503) and Legado (Doc. No. 508) in resolving the case.

have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *Superior Crewboats*, 374 F.3d at 334.

### a. Inconsistent Positions

Houff asserts that Legado took inconsistent positions with regard to Houff's interest in the ORI and in a lien securing such interest. Although Houff references multiple instances[12] in which Legado allegedly took inconsistent positions, Houff focuses primarily upon Legado's silence at the July 21, 2008 hearing on the Disclosure Statement and Motion for Approval of Compromise.

During the hearing, Houff's counsel inquired whether Legado, as the party acquiring Debtors' assets, "would then assume the [Debtors'] obligation to assign the overrides" to Houff. Debtors' counsel answered that the Sale and Assignment would be subject to Houff's override and Legado's counsel remained silent when the Court asked for input from the other parties.

At the outset, it must be understood that Legado, as a co-movant on the Motion for Approval of Compromise, had a duty to object to the answer counsel for the Debtors' provided to the Court. *See A.B.F. Freight Systems, Inc. v. Austrian Import Serv., Inc.*, 798 S.W.2d 606 (Tex. App.—Dallas 1990, writ denied) ("The principal of estoppel by silence is applied where a person, who by force of circumstances has a duty to speak, refrains from do so thereby causing another party to believe in the existence of a state of facts, and that other party relies thereon to its prejudice.").[13] Thus, Legado's silence does not provide a defense and it "may give rise to

---

[12] Two such instances—Legado's stipulation at the Nov. 26, 2008 hearing and the Nov. 11 email contained in Exhibit 7 to the June 24, 2009 hearing—are discussed above and will not be repeated here.

[13] The Court recognizes that estoppel by silence generally arises in instances of equitable estoppel and not judicial estoppel. Since equitable estoppel is a broader doctrine than judicial estoppel (which only applies in judicial proceedings and where reliance is unnecessary), the Court finds it appropriate to apply estoppel by silence in the context of judicial estoppel in this case. *See OSRecovery, Inc. v. One Groupe Intern, Inc.* 462 F.3d 87, 94 n.3 (2d. Cir. 2006) ("equitable estoppel is proper where the enforcement rights of one party would create injustice to the other party who has justifiably relied on the words or conduct of the party against whom estoppel is sought,"

10

estoppel as effectively as spoken words." *See LaRue v. LaRue*, 832 S.W.2d 387, 393 (Tex. App.—Tyler 1992, no writ).

Legado claims that its failure to object does not give rise to an inconsistent position. Legado argues that Houff's counsel's question at the July 21, 2008 hearing focused solely upon Houff's royalty interest and did not encompass Houff's non-royalty interests, including Houff's AOI Lien. Essentially, Legado separates Houff's Agreements with Debtors into two separate agreements: an agreement to provide a 3% royalty and an agreement providing Houff additional contractual rights, including a lien to secure the royalty.

This Court has already held that Legado is estopped from challenging Houff's 3% royalty in existing and after-acquired leases. Legado essentially argues that the estoppel does not extend further. Legado additionally asserts that its position is wholly consistent with the Confirmation Order, which provided that the assets were to be sold free and clear of liens and encumbrances.

The Court is not persuaded by Legado's attempt to restrict the degree of its estoppel to the 3% royalty alone. First, it is essential to note that in Legado's initial response (Doc. No. 462) to Houff's Motion for Payment—filed on May 18, 2009, nearly a year after Legado's silence at the disclosure statement hearing—Legado took the position that Houff was not entitled to any new royalties or liens from Legado. Legado stated that it would only honor the assignments already provided by Debtors to Houff prior to the Sale and Assignment. It was only after this Court determined on June 24, 2009 that Legado was estopped from challenging Houff's right to a 3% royalty in after-acquired leases that Legado began asserting its present theory. Thus, Legado's original theory in this dispute that Houff is entitled to nothing from

---

whereas, judicial estoppel applies where a party takes a position that is inconsistent with one taken in a prior proceeding).

11

Legado (apart from royalties due from prior assignments by Debtors to Houff) is inconsistent with Legado's silence on July 21, 2008.

On July 21, 2008, Debtors' counsel took the position that the Sale and Assignment was "subject to" Houff's override. When a purchaser acquires assets "subject to" an existing interest in the land—including an overriding royalty interest or a lien—the purchaser "takes the land charged with the payment of the debt, and is not allowed to set up any defense to its validity." *See Beauchamp v. Zellmer*, 227 S.W. 965, 968 (Tex. Civ. App.—San Antonio 1920, writ granted); *see also T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291-92 (Tex. Civ. App.—Austin 1983, writ ref'd n.r.e.) (explaining that an overriding royalty interest is an interest in land). By remaining silent, Legado agreed to take Debtors' assets charged with fulfilling Debtors' obligations to Houff. Legado's current attempt to avoid fulfilling those obligations—which were ongoing and explicitly binding upon assignees such as Legado—is clearly inconsistent with Legado's prior silence.

Additionally, Legado purchased these assets from a bankruptcy estate. It is axiomatic that the Debtor's sale of assets outside of the ordinary course of business can only be done pursuant to a Court order. 11 U.S.C. § 363; 11 U.S.C. § 1129. The Court's order was procured with the representation that the assets would be sold subject to Houff's interests. If Legado intended to purchase something different from what the Court intended to order, then Legadao had a duty to speak. Alternatively, Legado could have determined that it would not purchase what the Debtor was selling. But, Legado could not purchase what the Court did not authorize.

The Court further finds that Legado's current theory (which takes into account the Court's June 24, 2009 estoppel holding) is also inconsistent with its silence at the July 21, 2008 hearing. Houff's lien is an integral part of his ORI. The lien is contained in the form of

assignment, which is set forth in ORI Agreement between Houff and Debtors. Houff's counsel asked on July 21, 2008 whether Legado would assume Debtors' obligation to assign the ORI. Debtors' obligation included a specific form of assignment, which contained a lien. If Legado had a problem with the form of assignment, Legado, as a co-movant on the Motion to Approve Compromise, was obligated to speak.

Under Legado's narrow view, since Houff's counsel did not explicitly mention the term "lien"—but instead only asked whether the Debtor was selling "subject to" the ORI, judicial estoppel does not apply. But, the lien requirement was contained within the text of the recorded ORI. If Legado purchased "subject to" the ORI, then it did so as a whole. It cannot now select those matters which are beneficial and those which are onerous. Legado's theory smacks of the gamesmanship that the doctrine of judicial estoppel is meant to discourage. *GE Plastic Pac. PTE, Ltd.*, 327 F.3d at 397 ("[T]he general principles of judicial estoppel . . . state a party cannot advance one argument and then, for convenience or gamesmanship after that argument as served its purpose, advance a different and inconsistent argument.") (citations omitted). Here, Legado's silence served the purpose of quieting Houff and enabling the sale to proceed; Legado is now advancing a contrary position to which Houff would surely have objected to had Legado advanced the theory on July 21, 2008.

Legado also argues that its current position is the same position it held when the Confirmation Order was signed. However, the Confirmation Order was signed on August 22, 2008, over a month after the July 21, 2008 hearing. Thus, Legado's position in the Confirmation Order is also inconsistent with its silence at the July 21, 2008 hearing. The Court finds that its Confirmation Order did not extinguish Legado's prior inconsistent position. As set forth above, Legado could not purchase what the Court did not authorize. Legado was a co-

13

movant on the Motion to Approve Compromise which specifically dealt with whether Legado could bid for, among other assets, the very asset that is now at issue.

### b. Court's Acceptance of Previous Position

The judicial acceptance requirement "does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). "Rather judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as party of a final disposition."

Here, the Court previously accepted Legado's silence and Debtors' counsel's affirmative response to the question of whether Legado would assume Debtors' obligation to assign the overrides. For the reasons set forth above with respect to Houff's real property rights, the Court could not have approved the Disclosure Statement without assurance that Houff's interests were protected.

Since there were no objections, the Court did not inquire into the specific terms of the Debtors' obligations or into whether Legado intended to assume all, or only some, of Debtors' obligations. Instead, the Court simply held that the Sale and Assignment was "subject to" Houff's ORI. As set forth above, agreeing to take the assets "subject to" the Debtors' ongoing obligations to Houff is inconsistent with Legado's current position. Since the Court explicitly accepted Legado's previous position, the second element of the inquiry is satisfied.

### c. Lack of Inadvertence

In order to find inadvertence, it must be shown that the party was unaware of the facts giving rise to the inconsistent positions. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601

(5th Cir. 2005). However, if a party has knowledge of the facts giving rise to inconsistent positions but is unaware of the duty to disclose such facts, inadvertence does not exist. *Id.*

Legado did not act with inadvertence in this case. Houff's ORI Agreement was properly recorded in the Official Records of Jackson County, Texas. Legado, as a purchaser of the assets subject to the recorded instrument, was on record-notice of Houff's interests. *See* TEX. PROP. CODE ANN. § 13.002 (Vernon 1984).

Furthermore, the circumstances surrounding Legado's actions reflect Legado's awareness of the facts giving rise to Houff's interests. The Disclosure Statement and Confirmation Order indicate that, unless otherwise provided, Debtors' Sale and Assignment to Legado was free and clear of liens and encumbrances. If Legado was truly unaware of the facts giving rise to Houff's interests, Legado would certainly have objected at the July 21, 2008 hearing when the Court found that the Sale and Assignment was subject to Houff's interests. Such a finding, if it was a surprise to Legado, would have been objectionable because it would have materially altered the Sale and Assignment.

Not only did Legado fail to object on July 21, 2008, but Legado's representations to the Court and Houff in the months following the plan's confirmation indicated that Legado was aware of Houff's interests. It wasn't until nearly a year later, in May 2009, that Legado objected to Houff's claims. Not only was the objection filed after considerable delay, but the objection also failed to mention surprise or inadvertence. Accordingly, the Court finds that the third element of judicial estoppel is satisfied.

### d. Conclusion

"Judicial estoppel is an equitable doctrine and the decision whether to invoke it [is] within the court's discretion." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

The purpose of the doctrine is to protect the integrity of the courts and prevent perversion of the judicial process. *Id.* The Court finds that Legado's conduct is the type of behavior that judicial estoppel was designed to prevent. Further, as set forth above, Legado's conduct satisfies the three requirements for a finding of judicial estoppel.

Accordingly, the Court finds that Legado is judicially estopped from challenging Houff's ORI in existing and after-acquired leases[14] and from challenging Houff's AOI Lien.[15]

### 2. *Coastal Plains*

As an independent reason for the Court's conclusion, the Court finds that Legado is estopped due to its status as a successor in interest of the Debtors, with notice of the Debtors' statements on July 21, 2008 which are subject to judicial estoppel. As the facts set forth above indicate, the Debtors would clearly be judicially estopped from challenging Houff's ORI or AOI Lien because the Debtors (i) affirmatively represented that the Sale and Assignment was subject to Houff's override, (ii) the Court explicitly accepted the Debtors' position on the record, and (iii) the Debtors acted without inadvertence. Accordingly, based on *Coastal Plains*, discussed below, the Court finds Legado is estopped by Debtors' conduct.

In *Coastal Plains*, Coastal Plains ("Coastal") filed for chapter 11 bankruptcy in April 1986 and shortly thereafter initiated an adversary proceeding[16], without alleging an amount of damages, against Browning Manufacturing ("Browning"), its largest unsecured creditor. *Coastal*, 179 F.3d at 202. Coastal's CEO subsequently signed sworn bankruptcy schedules

---

[14] To the extent it was unclear, this portion of the holding simply reiterates and clarifies the Court's prior holding on the record on June 24, 2009.

[15] Since the Court grants complete relief to Houff (excluding his untimely request for attorney's fees), the Court need not consider Houff's remaining arguments.

[16] As set forth below, the adversary included a potential claim for $10 million. *Id.* However, many parties believed the adversary was settled when Browning returned certain assets to the bankruptcy estate and such parties were unaware of the additional unliquidated claim for $10 million. *Id.* at 209.

16

which omitted[17] Coastal's unliquidated cause of action against Browning valued at up to $10 million. *Id.* at 203. In September 1986 the bankruptcy court lifted the automatic stay and Coastal's assets were sold to Westinghouse through a foreclosure sale. *Id.* The day after the sale, Coastal's former CEO—who had formed a new company, Industrial Clearinghouse[18] ("IC") which employed all of Coastal's former employees—entered into a consignment agreement with Westinghouse to purchase Coastal's assets. *Id.* The sale was completed in February 1987 and the sale expressly included the previously undisclosed potential $10 million claim against Browning. *Id.* IC then pursued the claim against Browning and eventually recovered approximately $18 million. *Id.* at 204.

The Fifth Circuit found that Coastal had a duty to disclose the claim against Browning on its schedules. *Id.* at 207-08. Coastal's failure to disclose the claim against Browning and IC's subsequent assertion of Coastal's claim against Browning satisfied the inconsistent positions prong for judicial estoppel. *Id.* at 210. The second prong, the Court's acceptance of the inconsistent position, was not in dispute and the third prong, lack of inadvertence, was satisfied by Coastal's knowledge of the potential claim and motive for concealing the claim.[19] *Id.* at 210-12. The Court then held that IC, as Coastal's successor-in-interest, was judicially estopped from asserting Coastal's claims against Browning.[20]

---

[17] Coastal's awareness of this potential claim was never in dispute.

[18] In the words of the Fifth Circuit, "[o]n October 8, the day after the auction, and pursuant to negotiations the preceding month prior to executing the lift-stay stipulation, Westinghouse entered into a consignment agreement with Industrial Clearinghouse, Inc. (IC), to sell the assets Westinghouse had purchased at the auction. IC had been formed by Coastal's CEO . . . who was also IC's CEO; that same day, all of Coastal's employees became IC employees; and it used the same computer software and customer lists that had been used by Coastal." *Id.*

[19] The Court rejected Coastal's defense that it lacked knowledge of a duty to disclose as irrelevant. *Id.* at 212. Lack of inadvertence existed because "Coastal both knew of the facts giving rise to its inconsistent positions, *and* had a motive to conceal the claims." *Id.* (emphasis original).

[20] "Coastal avoided paying its debts by filing bankruptcy. Yet IC, formed by Coastal's CEO, purchased Coastal's assets, including the undisclosed $10 million claim against Browning, for only $1.24 million, and

17

Although *Coastal Plains* is somewhat distinguishable from this case, the Court finds significant similarities which merit application of the *Coastal Plains* holding to the case at hand. *Coastal Plains* holds that a successor-in-interest—with knowledge of a debtor-in-possession's ("DIP") conduct which would estop the DIP—is estopped from asserting claims subject to the DIP's estoppel.[21] The estoppel applies to the successor-in-interest to the same extent as it would if the estopped conduct were undertaken directly by the DIP.

In this case, Legado, as the purchaser of substantially all of the Debtors' assets, is the Debtors' successor-in-interest. Legado was present at the July 21, 2008 hearing in which the Debtors' counsel claimed that the Sale and Assignment was subject to Houff's ORI. Thus, Legado clearly had knowledge of conduct which would estop the Debtors from challenging Houff's right to the ORI. Accordingly, *Coastal Plains* provides an independent reason for the Court's holding that Legado is estopped from challenging Houff's right to the ORI.

## Attorney's Fees

In Houff's Supplemental Brief in Connection with Houff's Motion for an Order Directing Debtor and Transferee to Fulfill Administrative Duties Under First Amended Joint Plan of Reorganization (Doc. No. 503), Houff requests an award of attorney's fees. This was the first instance where such fees were sought from Legado. In Houff's original Motion for Payment (Doc. No. 305), Houff sought attorney's fees from Debtors but did not include Legado

---

continued to sell Browning's former inventory at discounted prices, then obtained a net judgment of $3.6 million against Browning on the undisclosed claims. For facts similar to those at hand, the bankruptcy court's interpretation of the 'inadvertence' exception for judicial estoppel would encourage bankruptcy debtors to conceal claims, write off debts, purchase debtor assets at bargain prices, and then sue on undisclosed claims and possibly recover windfalls. This, of course, would be to the detriment of creditors who decided not to bid on the debtor's assets at a foreclosure sale because they lacked knowledge about the existence or value of the undisclosed claims." *Id.* at 213.

[21] The Court recognizes that the *Coastal Plains* holding was subsequently limited by *Kane*. *See Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 386 (5th Cir. 2008) (holding that the trustee is not estopped from bringing debtor's undisclosed claims when pursuing such claims for the benefit of the estate's creditors). *Kane* is inapplicable in this case because the successor-in-interest, Legado, is seeking to bar Houff's interests for its own benefit and not for the benefit of the estate's creditors.

in the fee request. Further, in Houff's original Brief in Support of the Motion for Payment (Doc. No. 488), Houff failed to request attorney's fees.

Accordingly, because Houff failed to include a request for attorney's fees in his original pleading, Houff's inclusion of such a request in Houff's supplemental brief is untimely. Attorney's fees are denied.

## Conclusion

For the reasons set forth above, the Court grants Motion Directing Transferee to Fulfill Administrative Duties Under First Amended Joint Plan of Reorganization (Doc. No. 305) and denies Houff's request for attorney's fees. A separate order will be issued.

SIGNED **March 18, 2010.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE